# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVAN CRAIG,<br><br>                Plaintiff,<br><br>v.<br><br>DISCOVER BANK, et al.,<br><br>                Defendants. | Case No.: 21-CV-1407 W (AGS)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION [DOC. 86]** |

Pending before the Court is a motion to compel arbitration filed by Defendant Experian Solutions, Inc. Plaintiff Evan Craig opposes.

The Court decides the matter on the papers submitted and without oral argument. See Civ. L.R. 7.1(d)(1). For the following reasons, the Court **DENIES** Defendant's motion [Doc. 86].

//
//
//
//

1

## I.   BACKGROUND

On May 11, 2018, Plaintiff Evan Craig enrolled in a CreditWorks Premium membership.  (*Williams Decl.* [Doc. 86-1] ¶ 3.)  CreditWorks is an online credit monitoring program provided by ConsumerInfo.com, Inc., which does business as Experian Consumer Services.  (*P&A* [Doc. 86] 1:12–14.)  Defendant Experian Solutions, Inc. ("EIS") is an affiliate of ConsumerInfo.com, Inc.  (*Id.*)

When Craig enrolled in CreditWorks, he agreed to be bound by the Terms of Use Agreement, effective January 25, 2017 (the "2017 Agreement").  (*Id.* ¶ 4, Ex. 2.)  The 2017 Agreement contains an Arbitration Agreement governing "all disputes and claims between" Craig and "ECS" that arise "out of this Agreement directly related to the Services or Websites…."  (*Id.* Ex. 3 at p. 10.)  However, the provision excludes claims arising out of the Fair Credit Reporting Act ("FCRA"):

> …for the avoidance of doubt, any dispute you may have with us arising out of the Fair Credit Reporting Act (FCRA) relating to the information contained in your consumer disclosure or report, including but not limited to claims for alleged inaccuracies, shall not be governed by this agreement to arbitrate.

(*Id.*)

The 2017 Agreement also includes a section entitled, "Amendments," stating that the "Agreement may be updated from time to time" and that "[e]ach time you order, access or use any of the Services or Websites, you signify your acceptance and agreement, without limitation or qualification, to be bound by the then current Agreement."  (*Id.*, ¶ 5, Ex. 3 at p. 8.)

In 2019, Craig changed his service to the CreditWorks Basic membership.  (*Compl.* ¶ 8.)  On January 20, 2021, he again upgraded his service to the premium membership.  (*Id.* ¶ 8.)  When both changes occurred, the 2017 Agreement was in effect.

On the same day Craig upgraded his CreditWorks membership, he used the service to obtain a credit report prepared by EIS that disclosed the fraudulent accounts on his credit file, which are at issue in this case.  (*Compl.* ¶ 8.)  On May 11, 2021, Craig

obtained another report and then sent a letter to EIS stating that he was the victim of identity theft and listing the fraudulent accounts that appeared on his credit report. (*Id.* ¶ 65; *P&A* [Doc. 86] Ex. A.)

On August 5, 2021, Craig filed this lawsuit against EIS, among others, alleging EIS failed to remove the disputed accounts from his credit file because it failed to conduct a reasonable investigation. The only cause of action asserted against EIS is for violation of the FCRA. (*Compl.* ¶¶ 120–123.)

On February 10, 2022—six months *after* this lawsuit was filed—CreditWorks revised the 2017 Agreement. (*See Williams Decl.* Ex. 4.) Relevant to EIS's motion, the 2022 revision (the "2022 Agreement") amended the arbitration provision by eliminating the FCRA carve-out. (*Id.* at p. 34.) Approximately one month after revising the arbitration agreement, EIS filed the pending motion to compel arbitration under the 2022 Agreement. Craig opposes the motion arguing, among other things, that the 2017 Agreement governs.

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides: "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity." 9 U.S.C. § 2. "A party seeking to compel arbitration has the burden under the FAA to show (1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." Ashbey v. Archstone Prop. Mgmt., Inc., 785 F.3d 1320, 1323 (9th Cir. 2015). However, where the parties have designated the issue regarding the scope of an arbitration agreement to the arbitrator, the court determines if a valid, written agreement exists. See AT&T Techs., Inc. v. Comms. Workers of Am., 475 U.S. 643, 649 (1968) (whether an arbitration clause is valid, applicable, and enforceable

is reserved to the district court unless "the parties clearly and unmistakably provide otherwise.").

"The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 344 (2011) (quoting Volt Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989)). "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983).

### III. ANALYSIS

EIS seeks to compel arbitration under the 2022 Agreement. It must first prove that Craig is bound by that agreement by a preponderance of the evidence. See Norcia v. Samsung Telecomms. Am., LLC, 845 F.3d 1279, 1283 (9th Cir. 2017) (the party seeking arbitration has "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence.").

EIS contends Craig is bound by the 2022 Arbitration Agreement because after he "enrolled in CreditWorks, [Craig] has continuously used his CreditWorks service, which binds him to the current version of the Terms of Use." (*P&A* 4:23–25.) In support of this contention, EIS relies on David Williams' declaration. (*See id.* 4:11–12, 23–25.) However, according to that declaration, "Mr. Craig continued to regularly obtain his Experian report through his CreditWorks subscription to at least February 5, 2022." (*Williams Decl.* ¶ 8.) The 2022 Agreement was not effective until February 10, 2022, five days *after* Williams contends Craig obtained a copy of his Experian report. (*See id.* Ex. 4 at p. 27.) Because EIS's evidence does not demonstrate Craig used CreditWorks services after the 2022 Agreement became effective, it has failed to demonstrate he is bound by the agreement.

Furthermore, even if EIS provided evidence that Craig used his CreditWorks service on or after February 10, 2022, it would be insufficient to establish that the 2022

Agreement is valid and binding with respect to this lawsuit. The "Amendments" provision in the 2017 Agreement (as well as the 2022 Agreement) states, in relevant part:

> Each time you order, access or use any of the Services or Websites, you signify your acceptance and agreement, without limitation or qualification, to be bound by the then current Agreement. Modifications take effect as soon as they are posted to this Website (or any of the Websites, to the extent applicable to you), delivered to you, or reasonably made available to you in writing by ECS. ***However, no unilateral amendment will retroactively modify the parties' agreed-to dispute resolution provisions of this Agreement for then-pending disputes, unless the parties expressly agree otherwise in writing.*** In all other respects, any modification or update to the arbitration provision shall be governed by subsection (g) of the Agreement's "Dispute Resolution By Binding Arbitration" Section below.

(*Id.*, ¶ 5, Ex. 3 at p. 8 (emphasis added).[1]) This language establishes that while "order[ing], access[ing] or us[ing] any of the Services or Websites" is sufficient to "signify [a member's] acceptance and agreement" to amendments in general, a different requirement—i.e., a member's express written agreement—applies for an amendment to the parties' agreed-to dispute resolution provision for a "then-pending dispute." Thus, even if Craig ordered, accessed or used the CreditWorks service on or after February 10, 2022, it is not sufficient to constitute his acceptance or agreement to the 2022 Arbitration Agreement with respect to this "then-pending dispute."

---

[1] Subsection (g) provides:

> Notwithstanding any provision in this Agreement to the contrary, we agree that if ECS makes any change to this arbitration provision (other than a change to the Notice Address) during your membership in any Service, including credit monitoring, or subsequent to your purchase of any Service, you may reject any such change and require ECS to adhere to the language in this provision as written at the time of your enrollment or purchase if a dispute between us arises regarding such Service.

(*Id.* at p. 11.) This language does not alter the requirement under the Amendments' provision.

**IV. CONCLUSION & ORDER**

For the reasons stated above, the Court finds EIS has failed to establish that Craig agreed to the 2022 Arbitration Agreement. Accordingly, the Court **DENIES** EIS's motion to compel arbitration [Doc. 86].[2]

**IT IS SO ORDERED.**

Dated: June 13, 2022

_____
Hon. Thomas J. Whelan
United States District Judge

---

[2] The Court recognizes that the 2017 Agreement also includes an Arbitration Agreement. However, EIS's only reference to that agreement is in the factual background to acknowledge the 2017 Agreement was in effect when Craig originally signed up for CreditWorks. (*See P&A* 4:4–14.) EIS's request to compel arbitration is based entirely on the 2022 Agreement. (*Id.* 8:8–19 (arguing EIS is an "affiliate" under Exhibit 4); 11:15–26, 13:5–16 (arguing the delegation clause in Exhibit 4 delegates arbitrability to arbitrator); 17:11–19 (arguing EIS may enforce Exhibit 4 as a third-party beneficiary); 17:24–27 (arguing scope of Exhibit 4 "is to be decided by the arbitrator."); 19:5–18 (arguing scope of Exhibit 4's Arbitration Agreement is broad); 20:3–11 (arguing under Exhibit 4, Craig's claims are arbitrable). The Court assumes EIS does not seek arbitration under the 2017 Arbitration Agreement because the agreement explicitly excludes FCRA claims from its scope.